IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARISOL AGRON,
      Plaintiff,

vs.                                        Case No.: 3:19cv466/RV/EMT

ANDREW SAUL,
Commissioner of Social Security,[1]
      Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–83. Upon review of the record before the court, the undersigned concludes that the findings of fact and determinations of the Commissioner are not

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Fed. R. Civ. P. 25(d), he is the proper Defendant in this case.

supported by substantial evidence and application of proper legal standards and that the decision of the Commissioner, therefore, must be reversed and the matter remanded for the purposes set forth below.

## ISSUES ON REVIEW

Plaintiff raises four issues on appeal, arguing the ALJ erred in the following respects: (1) giving great weight to the opinion of Dr. Chen, a consultative orthopedist, while failing "to either adopt or reject and explain his reasons for rejecting Dr. Chen's assessment that Ms. Agron could sit for only five hours in an eight hour work day," which Plaintiff maintains would prohibit her from performing her past relevant work, as actually or generally performed (ECF No. 10 at 2); (2) failing to account for Plaintiff's mental and visual limitations in the residual functional capacity ("RFC") determination; (3) making the step four finding; and (4) not proceeding to step five and, at step five, making a finding of disability.

## PROCEDURAL HISTORY

On July 15, 2016, Plaintiff filed an application for SSI, alleging disability beginning May 15, 2016, based on glaucoma, migraines, lower back pain, depression, anxiety, and fluid buildup in the lower body (tr. 113–14).[2]  The claim

---

[2] The administrative record, as filed by the Commissioner, consists of nineteen volumes (ECF Nos. 8-1 through 8-19) and has 1159 consecutively numbered pages.  References to the record

was denied initially and upon reconsideration (tr. 171–73, 176–80). Plaintiff appeared for three hearings before the Administrative Law Judge ("ALJ")—on August 22, 2017, March 23, 2018, and October 5, 2018 (tr. 53–108). On October 12, 2018, the ALJ issued a decision finding Plaintiff not disabled under the Act (tr. 16–37). Plaintiff petitioned the Appeals Council for review of the ALJ's decision (tr. 14). The Appeals Council denied the request (tr. 1–5). The ALJ's decision thus became the final determination of the Commissioner. That determination is now ripe for review.

## FINDINGS OF THE ALJ

In his decision (tr. 19–30), the ALJ made several findings relative to the issues raised in this appeal:

- Plaintiff has not engaged in substantial gainful activity since July 15, 2016, the application date (*id.* at 21).

- Plaintiff has the following severe impairments: glaucoma, neck pain, lower back pain, depression, and anxiety (*id.*).

---

will be by "tr.," for transcript, followed by the page number. The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 22).

- Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(c) except she can lift and carry only 10 pounds continuously and 20 pounds frequently.  She can sit for six hours total and sixty minutes at a time, stand for three hours total and thirty minutes at a time, and walk for one hour total and fifteen minutes at a time in an eight-hour workday.  She can frequently reach overhead and in all other directions bilaterally; handle, finger, feel, push, and pull bilaterally; and operate foot controls bilaterally. She can occasionally crawl and climb stairs, ramps, ladders, and scaffolds. She can frequently balance, stoop, kneel, and crouch.  She can occasionally operate motor vehicles.  She can do all the normal daily activities of a person her age.  She is limited to frequent interaction with supervisors, coworkers, and the public and frequent changes in a routine work setting.  Although she has open angle glaucoma, she does not have any visual limitations based on best corrected visual acuity of 20/20 in the right eye and 20/25 in the left eye (*id.* at 24).

- Plaintiff is capable of performing her past relevant work as an administrative assistant, which does not require the performance of work-related activities precluded by her RFC (*id.* at 29).

- Plaintiff has not been under a disability, as defined in the Act, since July 15, 2016, the date the application was filed (*id.* at 30).

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   A reviewing court also may not look "only to those parts of the record which support the ALJ" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).   Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[3]

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An individual claiming Social Security disability benefits must prove that she is disabled. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps. "Throughout the process, the burden is on the claimant to introduce evidence in support of her application for benefits." *Adams*, 586 F. App'x at 533. The five steps are as follows:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria

of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[4]

5.  Even if the claimant's impairments prevent her from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors, she is not disabled.[5]

At step five (or step four in cases in which the ALJ decides a claimant can perform past work), the ALJ formulates RFC through interpretation of the medical evidence and the claimant's subjective complaints, based on the impairments identified at step two.   *See* 20. C.F.R. § 416.920(a)(4).   "[R]esidual functional capacity is the most [a claimant] can still do despite [the claimant's] limitations.   20 C.F.R. § 416.945(a)(1).   RFC is then used by the ALJ to make the ultimate vocational determination required by step five.

<u>FACT BACKGROUND</u>[6]

---

[4] The claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work.   20 C.F.R. § 416.912; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

[5] If the claimant meets her burden at step four, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.   *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).

[6] The recitation of facts set forth below is derived from testimony at the hearings before the ALJ.

There were three hearings in this matter due to the ALJ's conclusion that further consultative examinations were necessary.   At the time of the first hearing, which took place on August 22, 2017, Plaintiff was fifty-five years old (tr. 59).   She had a college degree in office administration and nursing and had worked as a secretary in Puerto Rico (*id.* at 59, 65).   As a secretary, Plaintiff typed on a computer, answered the telephone, greeted visitors, and performed other duties associated with an "office work environment" (*see id.* at 64).   Plaintiff last worked as a cashier at Walmart (*id.* at 63).

Plaintiff indicated she visited the office of her primary care physician, Dr. Gilbert L. Vigo, approximately every three to six months (*id.*).   She said she could not lift ten pounds, was unable to use her hands to type or open things because of pain and tingling, and had migraine headaches daily (*id.* at 74–75).   She rated the headaches at a ten on a ten-point scale but said they were reduced to around a three with medication, which made her sleepy (*id.* at 75).   She said she could not sit for sixty minutes at a time and, in fact, was "feeling lower back pain . . . [and] in [her] leg" during the hearing (*id.* at 81).   She said she could not stand for thirty minutes or three hours during an eight-hour workday because of spurs on both heels (*id.* at 82–83).   She indicated she had to lie down after standing and did so before the hearing while talking to counsel about the heel spurs (*id.* at 82).   She also said she

could walk for "[m]aybe five minutes" at a time (*id.* at 83). When walking for

longer than five minutes, she "almost die[d] because [of] . . . lower back pain and

pain on [her] heel" (*id.* at 84). She had to sit or lie down, use a heating pad, and

take muscle relaxers or pain medication (*id.*).

With regard to her vision, Plaintiff testified it was "not good" (*id.* at 95).

Plaintiff said she had glaucoma, which caused blurry vision and rendered her unable

to use a computer (*id.* at 71–72). She noted she used three different eye drops,

which caused itching, blurred vision, and fatigue (*id.* at 72). She also said her eyes

got tired and that she had to lie down to rest and would then fall asleep (*id.* at 73).

She testified she had to use glasses to see well but still could not see "completely

well" (*id.* at 96). As a result of glaucoma, she had blind spots in her eyes (*id.* at 97).

When asked the reason she thought she could no longer work as a secretary,

Plaintiff replied "[b]ecause I don't speak English, I speak a little bit" (*id.* at 77).

She explained, "to work as secretary you have to speak and write English perfect. I

cannot do that" (*id.*). Plaintiff indicated she would have trouble filing, typing, and

reading in English (*id.*). She also stated she had trouble during a consultative

psychological examination conducted in English because she "couldn't understand

most words" (*id.* at 78).

Counsel asked Plaintiff if she had problems getting along with other people (*id.* at 79).   She said "yes" and that she "like[s] to be alone" and does not like to be around people because she does not trust them (*id.*).   She said she has problems talking to people—due at least in part to the language barrier, which makes her irritable (*id.* at 79–80).   She continued, saying she "[got] mad for everything" (*id.* at 80).   She did not know why and could not control it (*id.*).   She also said she had problems with concentration and did not "remember seeing words" (*id.*).   She took Lorazepam and said one of the side effects was forgetfulness—in her case, especially with respect to the English language (*id.*).

A vocational expert, Jody Skinner, testified at the third hearing, which was held on October 5, 2018 (*id.* at 98).   The ALJ asked Ms. Skinner to assume a fifty-six-year-old female with a college degree in office administration and nursing, obtained in Puerto Rico, who had prior work as a retail cashier and administrative assistant; could continuously lift and carry up to ten pounds, frequently lift and carry up to twenty pounds, and never lift or carry over twenty pounds; sit for sixty minutes at a time and six hours in an eight-hour workday; stand for thirty minutes at a time and eight hours in an eight-hour workday; walk for fifteen minutes at a time and one hour in an eight-hour workday; frequently reach overhead and in all other directions, handle, finger, feel, push, and pull with both hands/arms; frequently operate foot

controls; occasionally climb ramps, stairs, ladders, and scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; and occasionally operate a motor vehicle (*id.* at 100–02).  The ALJ added that the hypothetical individual could do all the normal daily activities of a person her age but had mild limitations with respect to understanding, remembering, and carrying out complex instructions and making judgments on work-related decisions; moderate limitations with respect to interacting appropriately with the public, supervisors, and coworkers and responding appropriately to usual work situations and changes in a routine work setting; and had severe open eye angle glaucoma with age-related nuclear cataracts (*id.*).  The ALJ then asked whether such an individual could perform Plaintiff's prior work (*id.* at 102).  The vocational expert testified that such an individual could "return to prior work as [an] administrative assistant" (*id.*).

Plaintiff's counsel questioned the vocational expert as well.  First, counsel pointed out that one of the requirements of the administrative assistant position is dealing with people beyond giving and receiving instructions (*id.* at 103).  He then asked how someone with moderate limitations in the ability to interact appropriately with the general public, coworkers, and supervisors would "be able to interact at such a high degree" (*id.*).  The vocational expert replied, "I would not eliminate that based on moderate.  I would eliminate it based on marked" (*id.*).  Counsel

informed the ALJ that he thought the parties needed to define the term "moderate," which he opined would be occasional interaction with the general public, supervisors, and co-workers (*id.* at 104). The ALJ responded by stating that "moderate" should be considered "frequent" (*id.*). Counsel then attempted to get the vocational expert to agree that "frequent" interaction meant constant interaction (*id.*). The vocational expert testified she did not agree with that proposition (*id.*).

Counsel thus turned to the issue of Plaintiff's vision, asking the vocational expert whether a visual accommodation is required in the administrative assistant position (*id.*). The vocational expert agreed with counsel that the position required an ability to constantly focus visually, including on a screen and paper (*id.* at 104–05). Counsel asked if the hypothetical individual would be able to perform the administrative assistant job if cataracts limited her to occasional visual accommodation (*id.* at 105). The vocational expert said "[n]o" (*id.*). It appears counsel then asked the vocational expert to identify the visual accommodation requirements for the administrative assistant position, and the vocational expert said "[n]ear acuity is frequent, far acuity is none, depth is none, accommodation is frequent" (*id.*). Counsel asked the vocational expert whether an individual with "an occasional ability to do near acuity and accommodation" could perform the

administrative assistant position (*id.* at 106).   The vocational expert replied, "[n]ot based on the physical demands of the –" (*id.*).

After apparently cutting off the vocational expert's response, counsel asked whether "a person whose first language is Spanish and [who] is unable to vocationally communicate in English at a proficient level" would "have problems performing a job a[s] an administrative assistant in that she would have to answer the phone, deal with the public, [and] deal with workers and supervisors" (*id.*). Counsel added "[w]ould a person whose second language is English and who has problems in a vocational way understanding the English language, also has problems reading and writing in the English language, would that person be able to perform the job as administrative assistant" (*id.*).   The vocational expert responded "[n]o" (*id.*).

<u>DISCUSSION</u>

I.     Dr. Chen's Opinion

Plaintiff first argues the ALJ erred in evaluating the opinion of Dr. Leo Chen, a consultative orthopedic examiner.   Specifically, Plaintiff complains the ALJ gave Dr. Chen's opinion great weight but did not include in the RFC all the limitations Dr. Chen imposed or explain his failure to do so.

In evaluating medical opinions, an ALJ considers numerous factors, including whether the doctor examined or treated the claimant, the evidence the doctor presents to support his opinion, and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. § 416.927(c). A treating source's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting such an opinion. *See* 20 C.F.R. § 416.927(c)(2); *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinion of a non-treating physician, however, is not entitled to any deference or special consideration. *See* 20 C.F.R. § 416.902, 416.927(c)(1) and (c)(2); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013) (holding "[t]he ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding opinions of one-time examiners are not entitled to deference because they are not treating physicians). An ALJ may reject any medical opinion if the evidence supports a contrary finding. *See Williams v. Comm'r, Soc. Sec.*, 580 F. App'x 732, 734 (11th Cir. 2014) (*citing Sryrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues

reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."   20 C.F.R. § 416.927(d); *see* SSR 96-5p.   Opinions reserved to the Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance.   *See* SSR 96-5p.   Indeed, "[g]iving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   *Id.*   Although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, therefore, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.   *See* 20 C.F.R. §§ 416.927(d), 416.945(a)(3), 416.946(c); SSR 96-5p.

An ALJ may choose to accept some conclusions—or restrictions—within an opinion while rejecting others.   If such a choice is made, in addition to explaining the overall weight given a particular medical opinion, the ALJ must explain "with at least some measure of clarity the grounds for [a] decision" to adopt particular aspects of a medical opinion.   *Winschel*, 631 F.3d at 1179 (internal marks omitted). "However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court

to conclude that the ALJ considered [the claimant's] medical condition as a whole."
*Adams*, 586 F. App'x at 533.

Here, Dr. Chen examined Plaintiff on October 19, 2017, and found she had
no mental or environmental work-related restrictions but "her ability to perform
physical activity may be somewhat limited given her complaints and findings" (tr.
713).   He also indicated that "with appropriate evaluation and treatment, [her] level
of function would likely significantly improve" (*id.*).

Dr. Chen completed a medical source statement the same day, in which he
opined Plaintiff could continuously lift and carry up to ten pounds, frequently lift
and carry up to twenty pounds, and occasionally lift and carry up to one hundred
pounds (*id.* at 717).   He found Plaintiff could sit for sixty minutes at a time without
interruption and a total of five hours in an eight-hour workday, stand for thirty
minutes at a time without interruption and a total of three hours in an eight-hour
workday, and walk for fifteen minutes at a time and a total of one hour in an eight-
hour workday (*id.* at 718).   Dr. Chen found Plaintiff could frequently reach
overhead and in all other directions, handle, finger, feel, push/pull with both hands,
and operate foot controls with both feet (*id.* at 719).   Dr. Chen opined Plaintiff could
occasionally crawl and climb stairs, ramps, ladders, and scaffolds and frequently
balance, stoop, kneel, and crouch (*id.* at 720).   In Dr. Chen's view, Plaintiff could

only occasionally operate a motor vehicle (*id.* at 721). Dr. Chen did not assess Plaintiff's vision (*id.* at 720).

The ALJ gave great weight to Dr. Chen's opinion, finding the "assess[ed] physical limitations consistent with the assessed residual functional capacity" (*id.* at 28). The ALJ also found Dr. Chen's opinion "consistent with the objective evidence as a whole, which shows generally mild musculoskeletal and neurological findings" (*id.*). The ALJ concluded Plaintiff "should be capable of performing a reduced range of light level work with reaching and manipulative limitations to account for cervical degenerative changes and very slightly decreased grip strength as shown on the consultative examination" (*id.*). "Otherwise," the ALJ found, "the assessed postural limitations accommodate any pain due to lumbar spondylosis, and a restriction on driving prevents the risk of injury or accident due to glaucoma" (*id.*). The ALJ found additional visual limitations unwarranted, as Plaintiff "maintained 20/20 vision on the right with 20/25 vision on the left throughout the record" (*id.*). The ALJ gave less weight to Dr. Chen's opinion regarding mental and environmental limitations because he "does not specialize in psychiatry and did not conduct a thorough mental status examination" (*id.*). Finally, the ALJ observed that "'somewhat limited physical activity' is not well defined, and does not provide a function-by-function assessment of the claimant's limitations" (*id.*).

Plaintiff complains the ALJ gave great weight to Dr. Chen's opinion, which included that she could sit for a total of five hours in an eight-hour workday, but, in formulating RFC, the ALJ found she could sit for six hours.   Plaintiff argues the ALJ's failure to explicitly adopt or reject the sitting limitation Dr. Chen imposed and explain the reasons for his decision in that regard was erroneous, as the limitation would have impacted the finding that she could perform the job of administrative assistant as actually and generally performed.   Pointing to the fact that in her prior job she sat for a total of seven hours in an eight-hour workday, Plaintiff argues she could no longer perform the job as actually performed with the six-hour sitting limitation the ALJ imposed.   Pointing to the fact that the Dictionary of Occupational Titles ("DOT") describes the administrative assistant position as involving approximately six hours of sitting per eight-hour workday, Plaintiff argues she could no longer perform the job as generally performed with the five-hour limitation Dr. Chen imposed.

As set forth above, the ALJ is not required to assign weight to each and every specific finding made by a provider.   *Adams*, 586 F. App'x at 533.   Here, however, the ALJ gave Dr. Chen's opinion as a whole great weight.   He incorporated in the RFC all the limitations Dr. Chen imposed except for the five-hour sitting limitation.

And the ALJ wholly failed to explain his decision in that regard.   In so doing, the ALJ erred.

As the Eleventh Circuit explained, "[a]lthough the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to sufficiently explain[ ] the weight he has given to obviously probative exhibits." *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871 (11th Cir. 2012) (internal marks omitted).   In *Walker*, in formulating the claimant's RFC, the ALJ gave great weight to the opinion of the claimant's treating neurologist, who opined the claimant could work for a total of five to six hours a day, five days per week, if afforded a sit/stand option.   *Id.* at 869–70.   Despite giving the neurologist's opinion great weight, the ALJ found the claimant had the RFC to perform a limited range of sedentary work for a full eight-hour workday.   *Id.* at 870–71.   The ALJ did not explain his reasons for giving great weight to the neurologist's opinion but not incorporating in the RFC the sit/stand limitation the neurologist imposed.   The Eleventh Circuit held the ALJ erred in that regard, finding that "[w]ithout a clear explanation of the ALJ's treatment of the sit/stand limitation [the treating neurologist imposed], we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence."   *Id.* at 871.

The same is true here.  Because the ALJ gave Dr. Chen's opinion great weight but failed to explain the reasons for not incorporating in the RFC the sitting limitation Dr. Chen imposed, the undersigned cannot find the ALJ's decision supported by substantial evidence and application of proper legal standards.  *See id.*; *see also Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 906 (11th Cir. 2013) (finding ALJ's failure to account in RFC for squatting limitation imposed by physician whose opinion she gave great weight was erroneous (though harmless in that case because squatting was not required for any of the jobs the ALJ found the claimant could perform); *Choquette v. Acting Comm'r of Soc. Sec. Admin.*, No. 8:17-CV-2506-T-MCR, 2019 WL 1253842, at *1 (M.D. Fla. Mar. 19, 2019) (finding, in case in which it was unclear the weight the ALJ assigned a consultative examiner's limitations regarding standing and walking, and the ALJ imposed standing and walking limitations greater than those imposed by a state agency non-examining physician whose opinion the ALJ gave great weight, that the court was unable to conclude the ALJ's decision was supported by substantial evidence and remanding the matter with instructions for the ALJ to reconsider both opinions and explain the weight assigned them as well as the reasons for assigning such weight); *Sorrow v. Colvin*, No. 1:13-CV-02883-AJB, 2015 WL 630429, at *14 (N.D. Ga. Feb. 12, 2015) (finding "the ALJ's assignment of 'great weight' to the opinions of the reviewing

physicians . . . to be in conflict with his failure to address their limitations determinations or to incorporate those limitations into the RFC").

Unlike in *Timmons*, cited above, the error here is not harmless because if Plaintiff were able to sit for only five hours at a time, she would not be able to perform the administrative assistant position the ALJ found her capable of performing as she actually performed the position or as the position is generally performed in the national economy.   The matter therefore must be remanded for the ALJ to explicitly consider and explain the weight given Dr. Chen's five-hour sitting limitation, incorporate the finding in this regard in the RFC determination, and re-examine, at step four, whether Plaintiff can perform her past work as an administrative assistant.[3]

II.    Mental and Visual Limitations

Plaintiff next argues the ALJ erred in failing to incorporate all the limitations he found supported by the record when posing a hypothetical question to the vocational expert and formulating RFC.   In particular, Plaintiff contends the ALJ

---

[3]  The court notes that Plaintiff argues the ALJ should have deferred to the opinion of her treating physician, Dr. Vigo.   Dr. Vigo based the limitations he imposed on fibromyalgia.   Considering the ALJ found no medically determinable impairment of fibromyalgia and Plaintiff does not challenge that finding on appeal, the undersigned rejects Plaintiff's argument regarding the weight afforded Dr. Vigo's opinion.

failed to account for the mild limitations he found in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. Plaintiff also contends the ALJ erred in finding moderate limitations in interacting with others and adapting or managing oneself but allowing for "frequent interaction with supervisors, coworkers, and the public and frequent changes in a routine work setting." In so doing, Plaintiff maintains, the ALJ effectively imposed no mental limitations despite having found Plaintiff suffered from certain mild and moderate mental limitations. Finally, Plaintiff complains the ALJ found she has a severe visual impairment—glaucoma—but failed to impose any visual limitations, rendering the RFC inconsistent with his findings. According to Plaintiff, although the ALJ found she did not have visual limitations resulting from glaucoma, the ALJ failed to consider restricted visual fields, which are documented in the ophthalmological consultative examination conducted in April 2018.

The vocational expert testified, based on the hypothetical posed to him, that Plaintiff could perform her past relevant work as an administrative assistant (tr. 102). The ALJ relied on the vocational expert's testimony in finding Plaintiff not disabled. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments[,] . . . [b]ut the hypothetical need only include limitations supported

by the record." *Lanier v. Comm'r. of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007). And when posing the hypothetical, the ALJ must account for all of the claimant's functional limitations, even those caused by non-severe impairments. *See* 20 C.F.R. §§ 416.923, 416.945(a)(2) (requiring adjudicators to consider the functional effects of even non-severe impairments when formulating RFC); SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

As set forth above, the ALJ found Plaintiff had mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. The ALJ, however, did not include any of those limitations in the hypothetical posed to the vocational expert or otherwise account for them. The ALJ thus erred.[4] Accordingly, on remand, the ALJ must pose a hypothetical question to the vocational expert that specifically accounts for Plaintiff's mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *See, e.g., Winschel*, 631 F.3d at

---

[4] The undersigned rejects the Commissioner's argument that "the ALJ arguably accounted for the rating of mild difficulties in concentration, persistence, or pace by limiting Plaintiff to 'frequent changes in work setting'" (ECF No. 14 at 12).

1181 (reversing and remanding because the ALJ determined at step two that claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace but did not indicate such impairment did not affect claimant's ability to work or otherwise implicitly account for the limitation in the hypothetical—"[c]onsequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert").

Plaintiff also claims the ALJ erred in allowing in the RFC for "frequent interaction with supervisors, coworkers, and the public and frequent changes in a routine work setting" despite having found moderate limitations in interacting with others and adapting or managing oneself.   Even if the ALJ erred in that respect, any such error is harmless as the vocational expert testified at the hearing that she would not eliminate the administrative assistant position based on moderate limitations in the ability to interact appropriately with the general public, coworkers, and supervisors.

With regard to visual limitations, the ALJ found Plaintiff to have a severe impairment—glaucoma (tr. 21).   The ALJ also found, however, that Plaintiff did "not have any visual limitations" (tr. 24).   Plaintiff argues the two findings are "completely contradictory" and that the record "adequately supports visual limitations" (ECF No. 10 at 12).   In particular, Plaintiff states the record reflects

restricted visual fields and argues "there is clear evidence of a severe impairment that affects basic work related activities" (*id.*at 12–13). "[A]s such," Plaintiff maintains, "the ALJ was required to determine the extent of the limitations and incorporate them in the RFC" (ECF No. 10 at 12–13).

Plaintiff has the burden of proving she is disabled. *See* 20 C.F.R. § 416.912(c) (a claimant must provide evidence showing how her impairments affect her functioning during the alleged period of disability); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim") (internal citation omitted). Plaintiff, however, has wholly failed to point to evidence demonstrating any manner in which glaucoma or restricted visual fields impacted her ability to work as an administrative assistant. The undersigned thus finds Plaintiff has failed to show the ALJ erred with regard to her visual impairments.

III.   Past Relevant Work

As her third contention of error, Plaintiff argues the ALJ's determination at step four that she could perform past relevant work as an administrative assistant is legally flawed. In so arguing, Plaintiff points to the fact that despite the fact she was required to sit for seven hours in an eight-hour work day while working as an administrative assistant and the ALJ and consultative examiner found she could sit

for only six and five hours, respectively, the ALJ nevertheless found she could perform the job as actually performed. Plaintiff also says the administrative assistant position is identified in the DOT as a sedentary position, which entails sitting for a total of six hours, and that she could not perform the job with the five-hour sitting limitation Dr. Chen imposed. This issue is addressed above and needs no further consideration.

Plaintiff additionally claims she has a limited ability to speak the English language and thus could not perform the job of administrative assistant if required to do so in English.[5] Plaintiff says she "*may* meet the regulatory criteria of 'unable to communicate in English'" because she has "trouble typing and reading English" (ECF No. 10 at 15) (emphasis added). Plaintiff argues that "[w]hile [she] has been exposed to English over the years and can speak and understand 'a little' English (Tr. 77), there is no evidence in the record showing an effective ability, which requires a finding of 'unable to communicate in English' as a matter of law" (ECF No. 10 at 15). Even if she can communicate "'well'" in English, as the ALJ found, Plaintiff maintains "whether she has sufficient expertise in English to do a skilled job has not been established" (*id.*). Plaintiff says that although she testified at the

---

[5] Plaintiff's native language is Spanish, and, as indicated above, her past work as an administrative assistant occurred in Puerto Rico. *See* ECF No. 10 at 14.

hearing that she can speak English "'a little bit,'" that fact does not establish "the ability to speak English in a skilled position that requires 'conversant in the theory, principles, and methods of effective and persuasive speaking, voice and diction, phonetics, and discussion and debate'" (*id.*) (*citing* DOT 169.167-010).   And she "testified that she would have trouble typing, filing, and reading in English, all base requirements of the skilled job of administrative assistant" (*id.*) (*citing* DOT 169.167-010).   Plaintiff points to the testimony of the vocational expert that a person who is unable to proficiently read, write, and communicate in English would not be able to perform the job of administrative assistant (tr. 106).

The ALJ found the record and testimony indicated Plaintiff speaks English "'well'" and that she could perform the administrative assistant job as actually or generally performed (tr. 30).[6]   Again, Plaintiff has the burden of proving she is disabled.   *See* 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276.   Yet, Plaintiff has pointed to no objective evidence in the recording suggesting she lacks the ability to communicate effectively in English.   The record, in fact, supports the ALJ's finding

---

[6] In a footnote, Plaintiff characterizes her past job as a secretary, rather than an administrative assistant, and argues that "[i]f her job was actually that of a secretary, then she would not have the skills required to perform the job of administrative assistant as generally performed in the national economy as it is higher skilled" (ECF No. 10 at 14 n.6).   Plaintiff argues that "[t]his is yet another unresolved vocational conflict in the ALJ's very flawed step 4 finding" (*id.*).   Because Plaintiff does not unequivocally assert that her past work was as a secretary rather than an administrative assistant, this argument need not be addressed further.

to the contrary. *See, e.g.,* tr. 119–20, 158. Moreover, the ALJ heard Plaintiff

testify at three hearings and thus had firsthand knowledge of her English-speaking

ability. *See Perez v. Astrue*, 247 F. App'x 931, 934 (9th Cir. 2007) (holding "[t]he

ALJ did not err in discounting the plaintiff's claimed inability to speak English," as

"[t]he ALJ made factual findings based on her direct observation of [the plaintiff] at

the hearing and on other evidence in the record, and concluded that [the plaintiff]

had 'a greater ability to communicate in English than [the plaintiff] admitted at the

hearing'"). The undersigned therefore finds no error regarding the ALJ's findings

concerning Plaintiff's linguistic ability.

IV.    Step Five

Finally, Plaintiff argues that "[g]iven the fact that the functional limitations in

the evidence that were given great weight by the ALJ clearly show that Ms. Agron

cannot perform her PRW [past relevant work] as actually or as generally performed,

and that the mental limitations found by the ALJ would preclude the highly skilled,

interaction-significant PRW, the ALJ should have proceeded to step five of the

sequential evaluation" (ECF No. 10 at 16). The issue presented here is redundant

of the issues addressed above and thus warrants no additional attention. The

undersigned will note, however, that under this section of her Memorandum,

Plaintiff requests an award of benefits or, in the alternative, remand to address the

legal errors asserted.    Based on the above, the undersigned finds remand, rather than an award of benefits, appropriate to address the specific issues identified above.

## CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner erred and that the decision, therefore, should reversed and the matter remanded with instructions for the ALJ to explicitly consider and explain the weight given Dr. Chen's five-hour sitting limitation, incorporate the related finding in the RFC determination, and re-examine, at step four, whether Plaintiff can perform past work as an administrative assistant and pose a hypothetical question to the vocational expert that specifically accounts for Plaintiff's mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. [9]

Accordingly, it is respectfully **RECOMMENDED**:

That pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this

---

[9] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.    *See Moore*, 405 F.3d at 1208.    The court further notes that in recommending a reversal of the ALJ's decision and remand of the matter, the court expresses no opinion on the merits of Plaintiff's claim for benefits.

Report and Recommendation, and that the Clerk be directed to enter judgment and close the file.

At Pensacola, Florida this 25th day of February 2020.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.